Good morning, everyone. The first argument case this morning is No. 13-7056, Gilbert v. Secretary of Veterans Affairs, Mr. Stoltz. Thank you, Your Honor. Good morning, and may Your Honor, it is my great pleasure to introduce Mr. Stoltz. Mr. Stoltz was the first to interpret 38 United States Code, Section 1111, when it grafted on a type of nexus requirement not found in the plain language of the statute. The assumption of soundness applies in Mr. Gilbert's case. His sentence record is devoid of mention of a psychiatric condition, and he suffers from this condition now. But so is his service record. His service record is likewise devoid of a psychiatric condition. The only time the condition was documented was post-service. But it was already, it was documented post-service, but it's already been found by the Department of Veterans Affairs that the condition pre-existed service. So because it pre-existed service, and because his entrance record was clean, it is presumed that it's aggravated in this time of service. Why? Your admissions, or Mr. Gilbert's admissions, are that I've had this condition my whole life, et cetera, et cetera. There is no evidence of in-service depression that was treated in any form, so why would we presume there was an in-service injury when there is no evidence of in-service disability? You don't have to presume that there was an in-service injury. That's exactly what you're asking us to presume, aggravation of an injury in service. Aggravation, Your Honor, is not the same as incurrence. There are two ways to be entitled to service connection. There are a couple of different ways, but two of the main ways. But there's no evidence of aggravation here. There's no evidence of injury. There's no evidence of anything in service. But Mr. Gilbert does not need to provide any evidence of aggravation because it was not noted on his entry into service. Under 1153, under 38 United States... Okay, wait. Here's the nonsense of your position. He was not noted to have any depression prior to entering service. He was not noted to have any depression when he entered service. He was not noted to have any depression, nor is there any evidence, during his entire time in service. After he leaves service, he is diagnosed and treated for depression. And now, based on his admission that, well, I've been depressed my entire life, you want us to presume that his condition either occurred or was aggravated by service, despite the complete and utter absence of any proof of him having this condition during service. The point that I would take contention with Your Honor's characterization of what happened in this case is, it's not just Mr. Gilbert saying, I've always suffered from this condition. The Department of Veterans Affairs has already found that he suffered from this condition prior to service. So 1111 operates, as Wagner instructs, it operates by two different prongs. Prong one, in this case, has been rebutted. So it's not just Mr. Gilbert's word that he suffered... But I don't understand. 1111 only applies, and maybe that's the point of us taking this case and writing it. 1111, the presumption of soundness, only applies when there is an injury or aggravation. It only exists to create a presumption once an injury or aggravation is established by the veteran. Your Honor, I believe that Section 1153 exists for the scenario described by Your Honor. Did I misquote the presumption of soundness? I say, isn't it 1111? It's 1111. But there's 1111 and there's 1153. Had this been noted on his entry into service, let's say that he had been inducted and whoever was intaking him put down, he suffers depression and has since he was 14 years old. Then, in order for him to be entitled to service connection, putting aside all the compensation and all of that, in order for him to be entitled to service connection, had it been noted on his entry into service, he would have to demonstrate some type of aggravation or some type of incurrence. But it was not until 1111 controls. And under 1111, and under the General Counsel's interpretation of it, and under this Court's decision in Wagner, under 1111 there are still two parts to that. And because it was not noted on his entry into service, that's what controls, not 1153. But he has admitted that it existed prior to service. Why doesn't that pop us into 1153? It was not noted on his entrance examination. Does 1153 expressly require it to be noted? Yes, it does. If it is noted on entry, 1153 is what happens here. If it is not noted on entry, if he's got a clean entrance examination, then he is under Section 1111. Just to be sure, because I think there's been a shift of position here, you're not then arguing that the presumption of soundness applies. Is that correct? Your Honor, I am arguing that the presumption of soundness applies. And under Wagner, the presumption of soundness... You told Judge Moore that it was agreed and the VA found, and you're not challenging, that he had depression before he entered the military. He had. There's no question that he suffered depression before service. Well then, where is the logical flow? He had it before. You say there's a presumption of soundness. Yes. I think you're saying it's an irrebuttable presumption of soundness, but yet you're relying on the absence of soundness before entry into the military? I'm relying on... There's a couple of different steps here, and it's not an irrebuttable presumption. It can be rebutted, as we pointed out in the gray brief. It can be rebutted. It was rebutted. Are you accepting that it was rebutted? Aggravation of depression has explicitly not been rebutted. In fact, the Board of Veterans' Appeals... There's no presumption of aggravation, is there? There is, under the second part of the presumption of soundness. There are two parts, and that's why we cited... Only if the first part is satisfied. The first part is satisfied. It pre-existed service. It clearly and unmistakably pre-existed service, but it was not noted on his engines exam. And so it is presumed, and the Board found that it is presumed aggravated by service under the general counsel's interpretation of 3.304 and of Section 1111. Did Mr. Gilbert serve on the USS Dinsanity? No, Your Honor, I don't believe so. I have to go back and look. I couldn't find it in the record. I don't believe that he did. I think that there's a lot that... And the Board made several credibility determinations that are factual determinations that we did not plead before this Court. But the fact remains that he does suffer from some pretty severe psychiatric... Sure, but he's saying what aggravates it is an event where he was not present. Look, look, are you taking the position that any member of the service who watches the news and sees something occur that's traumatic can reasonably claim PTSD as a result? Absolutely not, Your Honor. And that's not what we're claiming here because I'm not... We are not advocating, and Mr. Gilbert is not advocating that it was his television watching or anything else. Before this Court, the factual scenario is not what we're here arguing. We're arguing the presumptions afforded by the plain language of 38 United States Code as interpreted by the Federal Register and by the General Counsel's own opinion and pointed out by this Court in Wagner. There are two parts of the presumption of soundness, and it applies in this case. The second part of that presumption of soundness is that it's presumed aggravated. If it pre-exists the service, then it is presumed that it's aggravated by the time in service. That is what happened here. He had depression, as we pointed out. He had depression before service. He's got depression now. The nexus requirement. The nexus requirement is satisfied. Think of it this way. The only thing that Mr. Gilbert would be able to do under the way the Veterans Court interpreted this is to go out and, first of all, demonstrate that it was incurred in service, which would be a redundancy because incurrence is not the issue. It is aggravation. And then he would get an examination saying, or words to that effect, that his depression, that he suffers from now, was aggravated by service. There is no point in doing that because he is entitled to legal presumptions. He does not have to do that. Had it been noted on his entry into service, he'd have to do something like that because he would not be entitled to the second part of 38 United States Code, Section 1111. But because he is, he's entitled to a very strong, and the language on this and the general counsel's opinion. Counsel, you represented to me that 1153, which I've now pulled up on my computer, expressly says it has to have been noted in entrance. And that is not correct. I will read 1153 to you. A pre-existing injury or disease will be considered to have been aggravated by active military, naval, or air service where there is an increase in disability during such service unless there is a specific finding that the increase in disability is due to the nature, the natural progression of the disease. So where, maybe there is a preceding section or a subsequent section or someplace else that says what you said, which is no, 1153 only applies if it was noted at the time of entrance. And there's nothing in 1153 that says that. So is there a different section that says it? I apologize, Your Honor. It's not in the plan language of 1153. I believe that the way that the court, and I will try to find some precedent, I'm happy to write any subsequent issue statement on that. A question that I possibly can, but the way that the Veterans Court has applied the law, and I believe that the way that Wagner laid this out is that 1153 does inform 1111, but that they are in fact different statutes. No, why doesn't 1153 apply? It is defining when a veteran can claim and how he should establish entitled to aggravation of a pre-existing injury. It doesn't say the pre-existing injury had to have been noted at the time of service. Why isn't this the only applicable provision to this case? It's because of the way that the case law has shaken out, that 1153... There's no Federal Circuit case law that's shaken out the way you're suggesting. I don't believe that there is. I believe that Wagner touched on it. I don't believe that there is a clear case law, but the way that 1153 does read, it's a little bit different than Section 11 because it's operating under the presumption that there was some type of aggravation. There is no umbrella in which the presumption is over and applies to every one of the subsequent sections. That's not true. The presumption is listed as a separate statutory section and it has limited applicability in certain kinds of cases. And why doesn't a separate statutory section that lay out aggravation what clearly applies here? Are you saying 1153 does not apply to this veteran? I'm saying that 38 United States Code 1111 applies. So an ambiguous code that makes no sense in this case applies, but the code that is directly on point for what he is claiming entitlement to, aggravation, does not apply to him? But this is discussed, Your Honor, in the General Counsel's opinion. It does apply. The General Counsel's opinion lays out, actually during the time that Wagner was being litigated, the General Counsel promulgated a General Counsel's opinion, which we cited in our blue brief, I believe. Anyway, it was cited. The General Counsel promulgated an opinion that laid out exactly how 1111 interplays in a situation like this. And it does lay out that the Department of Veterans Affairs is who bears the burden on who needs to demonstrate aggravation. And under 1111, which VA has applied in this case from the Board, and the Court made some findings to the contrary, but the Board did apply Section 1111. So he is, under that favorable finding of fact, entitled to that presumption. And under the General Counsel's opinion, it lays out what VA's duties are in this case, and VA has not met that burden. So you're using it as a sword. I don't think that it, the sword and shield analogy, I don't know that it really is a sword, because it is shielding him from having to demonstrate some type of, take some type of affirmative duty to demonstrate aggravation. It's something that Congress created for him to use as a benefit. I think it's a strong presumption, Your Honor. Well, he doesn't have to demonstrate aggravation in order to be declared sound at the time he entered service. Sound at the time he entered service. But we already know by everybody's admission that that's irrelevant here, because that's not true. You have admitted, why haven't you admitted away the presumption of soundness? By virtue of admitting, why isn't that an admission? The presumption of soundness doesn't apply to you because your client admitted, and it is undisputed, that he wasn't sound at the time he entered service. Because there are two parts. As Wagner made clear, there are two parts. It's soundness and it's aggravation. But the presumption of soundness only goes to what was his physical state at the time he entered service. Holton and other cases are crystal clear on this. It goes to how should we decide his physical state was on the day he entered service. And you've already admitted what his physical state was on that day. So why do we need the presumption of soundness? Why is it relevant? Holton and Dye in the cases that were cited in the pleadings did not deal with an aggravation part of this, did not deal with the second part of the presumption of soundness. Actually, it did. It made it clear, as far as I can tell, that the presumption of soundness does not relieve the veteran of his burden of showing an in-service injury or aggravation. Because in that case, Your Honor, the fact that this pre-existed service, in this rare circumstance, the fact that it pre-existed service and the fact that VA has rebutted that it pre-existed service in this rare circumstance, actually helps Mr. Gilbert's case today. Because the fact that the first part of it has been rebutted, that he was not sound upon his entry into service. I will read to you from our decision in Holton. The presumption of soundness does not relieve the veteran of the obligation to demonstrate a nexus between the disability and the in-service injury or disease or aggravation thereof. That's at page 1369. But that's exactly what you're asking for. You're asking the presumption of soundness to relieve the veteran of putting forth any evidence that his injury was aggravated during service. I'm asking for the same interpretation that the general counsel has given to the statute and to his own regulation. Let's hear from the government. I think we're not achieving a meeting of the minds. Mr. Hockey. May I please report? As has been discussed and as we indicated in our papers, we believe Holton answers the question presented here. I will say before I begin, I'm going to come to... Do you think the Veterans Court has it all laid out exactly right in their opinion, Mr. Hockey? Because I had a little trouble making sense about it. You know, I actually... The more I read the Veterans Court's opinion, the more I like it. Really. Which one? The dissent or the... Not the dissent. And the majority... It's not even the majority on the point of what... Does the presumption of soundness apply in a situation where the veteran by his own admission was not sound at the time of entrance to service? So, to answer the dialogue that was just occurring, this court actually has chimed in on this issue, and it is Wagner. Do you have a yes or no to Judge Moore's question? The presumption of soundness would be, in this case, the correct way forward for Mr. Gilbert, not 1153. As this court indicated in Wagner at page 1096, it all depends upon what the in-service papers indicate. If the in-service papers are silent with respect to a pre-existing injury or disease, as they were in this case, then the correct approach for the veteran later to try to use one of these types of presumptions is the presumption of soundness, which does have two parts. The first part is that you are presumed... Well, if you can establish, and this is the key, as Judge Moore indicated earlier, the key is, and as this court has already held in Holden, you have to have some evidence of incurrence during the service. I mean, the hypothetical I think we have in our brief would be an individual doesn't have any indication on his induction papers of any kind of a problem, nor on his exit papers, nor through service, but 30 years later comes in and says, I have a present disability, and because my induction papers were silent, I deserve service connection under the presumption of soundness. Now, certainly that wouldn't apply. Similarly, in this case, the papers were silent. So how the presumption of soundness would work in Mr. Gilbert's case would be he'd come in, he would have to identify some incurrence, which the record below indicates that he has not. But let's assume, for purposes of this discussion, that he had. Then the way the presumption of soundness would work is that he would say, now I've established that I had this present disability or some similar thing in service, and the secretary might say, but wait a minute, there's a record in here that indicates that when you were 15 you had depression. And so that pre-exists in service. So the way the presumption of soundness works is then Mr. Gilbert says, no, hold on, wait a minute, I have the presumption of soundness under 1111. There was no notation on my entrance exam about any kind of depression or anything like this, so under the presumption of soundness I benefit. You cannot use that secretary document from my 15th birthday or whatever against me, unless that you come up with more evidence, clear and unmistakable evidence, that demonstrates that what I said happened to me in service and what the evidence shows happened to me in service actually occurred prior to service. But they crossed that bridge, didn't they? The secretary made an explicit finding that there were these symptoms of depression and suicidal tendencies and so on before entering into the service. So if that then dissipates the presumption or if it's a rebuttable presumption, then isn't the only question whether there was aggravation? Well, yes, that's the next step, Your Honor. If the secretary comes in under 1111's plain language in this court's decision in Wagner, if in that situation, again, I'm actually proceeding on... That's the situation, is it not? Under my hypothetical, not in this case. See, in this case we have the problem, as I started in my hypothetical. You saw it as challenging the secretary's finding that this condition prevailed before service. No, but the finding of the board, which they didn't factor into their analysis and what the Veterans Court focused on in suggesting that they misinterpreted 1111 was that there was no evidence of actual in-service incurrence. In other words, there was no evidence of this happening while he was in the service. There was certainly evidence of him having a mental condition prior to service. But everybody admits that he had this prior to service, he had it during service, he had it after service. No, the during service part is the problem here, and that's where Holton's second part that you quoted earlier comes in. The during service part, the board found that the only evidence of during service was his lay testimony, which they found incredible, given his contradictory testimony throughout the claim development process. So the board found, and this is sort of the distinction between the majority and the percent from the Veterans Court, the board found that there was no evidence of in-service concurrence, but they went ahead anyway. Wait, time out. All four of the VA examiners, there are four separate exams. Yeah. And all four of them, the first two were almost exactly the same and the second two were different. But all four of them consistently found that he suffered from depression, possible personality disorders, some substance abuse issues, and that all of this preceded service and has been a lifelong condition. And why isn't that sufficient evidence to show, look, you don't have these problems one day, not have them the next day, and then have them again the third day. Or at least there's nothing in this record that would suggest that was true. In fact, I think the record suggests the opposite. I appreciate that interpretation of the record. I have a slightly different interpretation of the C&P examiner's reports, which are that he was suffering from depression prior to service, which they associated with, let's just say A. I don't know what it was. And he was suffering from depression at the time of the examinations that they conducted well after service. And they associated that. Maybe that was A or maybe that was B. But what they all seemed to hold were two key points, and this is what the basis of the board's and more succinctly the Veterans' Board's position. Can you direct me to those? Because I kind of thought, and I'm probably just misremembering the record, but I thought that the reports indicated this was sort of a consistent, lifelong condition. And I'm maybe reading too much into them, so will you point me to the actual records and show me? Well, I'm familiar with the last three C&P exams. I mean, in the record they're at, one of them's at JA-77, one's at JA-94, and the other's at JA-117. Now, I have little summaries of them here, but they talk about his lifelong issues. But what we gather from the conclusions or the overall spirit of the decisions is, first of all... Where they say relationship to military experience. That's where they all sort of come down and say there's no relationship between what he presently suffers from and his military service, and that's the nexus. No, two of them said, two of them at the end said that the last two, as I understood them, both cited military service intertwined or connected with his depression. The last one you're referring to is not a C&P exam. That's a February 2001 treating physician note that Mr. Gilbert provided to the Secretary in support of his claim, in which the treating physician said and used the word tightly woven to describe what he perceived was a relationship between the present disability and service. But the C&P exams, those more traditional exams that are provided to determine service connection under 5103 A, are the 2007, 2009, and 2010 exams by Drs. Thatcher, Mullen, and Cook-Arney. And those are, as I said, 77, 94, and 117 of the JA. Those are the actual C&P exams. And as Judge Wallach noted, all three of those individuals indicated that they could not see any relationship between his present disability and his military service, which goes to the nexus requirement. And without the nexus requirement, you can't get service connection. And so that's why we started our brief and explained, as the Court said in its primary holding in Holton, the presumption of soundness, no matter how you parse it out, doesn't deal with the nexus problem. And without nexus, you don't get service connection. So that was actually the main reason, I think, why the Veterans Court didn't remand this, because the Board had also agreed that there was no nexus, and so there's no reason to remand for determination. The purpose of the presumption of soundness is to avoid having to prove nexus? No, you can't use the presumption of soundness. That's what Holton and numerous other cases... What's the purpose of the presumption of soundness? The in-service prong. It's all about trying to establish whether things were incurred in service. That nexus, is it not? No, nexus is the relationship... Let's do a different hypothetical. An individual comes in 30 years after service with a broken right leg, and he says, but I broke my leg in service. But it was his left leg he broke in service. He can demonstrate, perhaps, through medical evidence, that he had a broken leg in service, and through the presumption of soundness, that he didn't have a broken leg on induction, and he can demonstrate that he incurred a left leg break in service. But if his present disability is his right leg, that doesn't help him. He still has to establish how his present disability is related back to service. If I'm understanding you right, and I have to be honest, the way in which everyone, in this case, is arguing to me that these laws intertwine with each other is very muddy for me. I'm having a lot of difficulty figuring out how all these pieces of the puzzle fit together, but if I understand you correctly, you're claiming that if there isn't evidence of the fact that he had this disability during service, that the presumption, whatever, I don't know. So you pointed me to 77, so I've been paging through 77 to see why was it I walked away with this idea that it was a lifelong thing, and let's look on page 88, which I believe this is the one that starts on 77, the same thing, and the doctor explains on his relationship to military experiences. His personality disorder probably had its origin from childhood, from his genes, I don't think those are compensable anyway if I remember this code right, so I'm not sorry about that. He reports never being happy since 14. It seems that he brought his depression into the service with him. Hence, he was depressed in service. Right? How else do you read that sentence? He brought his depression into the service with him. If I bring you into a room with me, you had to have stepped foot in the room. How do I read this as anything other than accepting an acknowledgment that he was depressed in service, and why doesn't that flip all your presumptions on their head by virtue of what I think you're arguing? That's a good point, Your Honor, but I think that the answer would be that that wasn't sufficient below for the fact finders to establish the in-service aspect. I hear you, but I think the record below in every single opinion is a muddy mess with these presumptions, and so I've got to be honest with you, if I understand what you're saying the law, how it should work out, then it seems to me if I establish that as the rule, they need to go back and look at this because they didn't look at this. Not under the rubric that you're suggesting to me the law ought to. No, I think that they did look at this. They looked at it, and consistent with this Court's decision in Holton, as instead of the two-step process that's articulated under the plain language of 1111, which says once you have, well, it's actually a three-step process, and that's when you clearly read 1111 and 1110. They found that the injury wasn't incurred in service, but what you're saying is he didn't have to prove it was incurred in service, he only has to prove that he had this disability at some point during service. That's what you said, right? That's true, but that's equivalent to incurrence in service. There's evidence showing, there's acceptable evidence showing that while he was in military service he had this, an issue, an event occur. The language from 1110 is like an event. No, see, but the way that this entire record reads to me and all of the opinions is none of his problems are linked to, i.e., caused by his military service, but if I'm understanding the way you're telling me to interpret the law, that's not what he has a burden to establish. All he's got to show in light of the presumption is that the injury manifested itself during service. For purposes of prong two, but all those medical exams do show, they all seem to be nexus. What do you mean prong two? He didn't have any burden on prong two. The government's got the burden on prong two. I use the in-service as my prong two. I thought you were talking about number two in this. I look at three prongs, though we're all playing in the same playing field, as present disability is prong one, in-service event or disease is prong two, and then the nexus is the relationship between the two. I do that because if you don't have a present disability, you shouldn't be applying for VA benefits. You have to come in with a present disability. His present disability is X. It seems to me that what Your Honor is saying, and I think Judge Wallach noted it as well, the three C&P examiners seem to be nexus-driven in this case, and that does seem to confuse things a little bit. But the answer for this court is relatively simple because all three opinions concluded that there was no nexus. That's the alternate holding below, which is the larger holding at Houlton, which would allow this court to simply affirm on the grounds that there was no nexus shown, rather than get into the morass of the prong two. How does the presumption of soundness apply with regard to all this? If he's got a presumption of soundness, i.e. he entered service sound, and then he has an in-service injury, i.e. depression in-service. Now, presuming that that's established by the record, which in this case it wasn't, but presuming it was, then the way the presumption of soundness, and this is what this court said in Houlton. It doesn't obviate that nexus requirement. First of all, right, it doesn't obviate the nexus requirement, but as this court said in that second part of Houlton, which you read earlier, Judge Moore, it also does the presumption, nor does the presumption of soundness relieve the veteran of the burden of showing that the veteran suffered from a disease or injury while in service. That's a requirement before you get to the presumption of soundness. What the Veterans Court does in this case is take what many people have always referred to the presumption of soundness as sort of like, presumption of soundness first, and then evidence of incurrence second. That's sort of backwards. You don't really even need to look at the presumption of soundness until you have some evidence of incurrence. Once you have the evidence of incurrence, and this gets to the sword-shield analogy, then you have a situation where the secretary could come and say, well, look at this, like I said earlier, the 15-year-old record says that he had this earlier prior to service. That's where Mr. Gilbert or another claimant says, no, shield, presumption of soundness, you can't use that against me unless there's clear and unmistakable evidence. So suppose that I read this record as establishing depression in service. That would be improper because you'd be overruling a factual finding. But see, I don't think that fact-finding was actually clearly made anywhere because I think they were dealing with a convoluted interpretation of the statute. I would respectfully disagree. Well, of course you do, but go ahead. So anyway, assume that that's what I was thinking about this case and that I thought somehow I had the authority to do that. So then just tell me what should have happened to this case. If he was able to demonstratively prove depression in service, there's no record of it existing before service, so the presumption of soundness kicks in even though he admits it was there before service, what happens? Does he get benefits under that scenario? No, he still has the nexus hurdle to overcome, which this record, I think, overwhelmingly demonstrates the absence of nexus. But I think earlier you asked a question, Judge Moore, and I want to actually, if I can just – But wait, why does he have to show – We need to wrap it up. I think we're repeating ourselves. Yeah, okay. The bottom line in this case is the nexus is missing. Even if you have some concerns about the second step of Houlton, the nexus is absent and the court should move on. Okay, thank you, Mr. Hockey. Mr. Stones, we've run over a bit, so we need three minutes for rebuttal. Thank you, Your Honors. I want to first start by apologizing for my not being clear before and trying to help sort out the mess that kind of is – mess that can be these presumptions. The presumption under 1153 and 1111, as my opposing counsel pointed out, is found in Wagner, and it is discussed more at length both in the general counsel's opinion, which is cited in the white brief, and is discussed in the Horn case at 239. So there is, in fact, a difference between 1111 and 1153. I apologize for not being clearer about that earlier, but I wanted to make sure that I hit that. The problem in this case that – or what is helping Mr. Gilbert in this case is that the nexus requirement that is advocated by the Department of Veterans Affairs is a redundancy. If Mr. Gilbert were asked to go out and gather evidence of a nexus in service, he would get an examination that said he has depression. It is related to – or he could say it was aggravated, which is what we're under here. He would get an examination that says he has depression. This depression was aggravated while the veteran was in service. There's no reason for him to get that examination in this case because he benefits from 38 United States Code 1111 as – But affirmatively, there are examinations that say that it wasn't aggravated. But none of them say that it clearly and unmistakably was not aggravated, and that's the burden, and that's the point of this case is that it's – at the end of the day, it's a question of – I understand Mr. Hockey, and I am not completely convinced that I understand this yet. But as I understand him, 1111 only goes to what he calls prong two, right? It only goes to whether there's an in-service injury. It doesn't go to prong three, which is a nexus. The presumption of soundness gives you – carries no water for the nexus burden of any kind, but it does definitively remove from the veteran the obligation of proving prong number two. That's what I understand him to be arguing, although I could be wrong. It does do that, and the general counsel's opinion that's uttered in the White Brief, I think, does a pretty good job of walking through how the Department of Veterans Affairs interprets 38 U.S.C. 1111 as opposed to 1153 and goes through what it needs to rebut. But in an aggravation case, it's presumed that it's aggravated. He has it now. Nexus is obviated by this particular circumstance, the way 1111 operates. Nexus is what? It's essentially, as we said in our brief, it's essentially the way to think about nexus, because it's aggravation. If he has a condition now and it was aggravated in service, which is the presumption, then he is entitled to service connection, not necessarily compensation. What do you mean it was entitled? There's no presumption that says it was aggravated in service. There's a presumption that he was sound when he entered service. Where in the code do you read a presumption that it was aggravated in service? Where does that presumption appear? I read it as the second part of 1111. No, 1111 is if the government can't prove it wasn't aggravated, he gets a presumption that he was sound the day he entered service. That does not equate to a presumption of aggravation. But the way that the government has to prove that is by clear and unmistakable evidence. It's not Mr. Gilbert's burden. It's their burden. But what does that have to do with anything? That just establishes he was sound when he walked in the door. Because they didn't do that. The Department of Veterans Affairs didn't do that here. As Your Honor rightly pointed out, through all the exams, they're questionable on this. But what bleeds through clearly, and you don't have to make a factual finding to do this, is that it was not rebutted by clear and unmistakable evidence. And that's the point here. It's an evidentiary burden case. And the evidentiary burden is on VA and they did not meet it. And that's where the Veterans Court went astray here. Okay. Thank you, Mr. Stewart. Thank you, Your Honor.